Forst *v.* Kirkpatrick.

---

JOSEPH M. FORST and WILLIAM S. COVERT, partners, &c.,

*v.*

MARIA KIRKPATRICK et al.

[Filed March 20th, 1903.]

1. Where a mortgage is given a firm, and thereafter one of the members retires, the new firm, although pursuing the same business and under the same name, cannot enforce the obligation unless the right to enforce it is acquired by a new contract.

2. Where, after the dissolution of a firm, an account with it is carried on as a running account with the succeeding firm, payments made to the succeeding firm, unless appropriated, will go to discharge the oldest items of the account.

On bill to foreclose.

*Mr. Barton B. Hutchinson,* for the complainants.

*Mr. James Buchanan,* for the defendant Maria Kirkpatrick.

*Mr. Scott Scammell,* for the defendant Maria E. Vroom.

REED, V. C.

The mortgage sought to be foreclosed was made by Alexander Kirkpatrick, the husband of Maria Kirkpatrick, the defendant, to Daniel P. Forst, William H. Skirm, Charles W. Leeds and Joseph M. Forst, partners trading as D. P. Forst & Company. It was executed March 18th, 1875, and purported to be made to secure the sum of $1,300. Mr. Leeds and Mr. D. P. Forst are dead, and William H. Skirm has assigned his interest in all the assets of the firm to the present members of the firm of D. P. Forst & Company, who are the complainants.

On January 13th, 1876, Alexander Kirkpatrick, through one Charles Huston, conveyed the property mortgaged to his wife, Maria, who now owns the equity of redemption.

Previous to and at the time the mortgage was made the firm of D. P. Forst & Company were wholesale dealers in groceries and provisions, and Alexander Kirkpatrick was a retail dealer in the same articles, and bought his supplies from the firm. At the date of the mortgage he owed the firm $1,286. Contemporaneous with the execution of the mortgage the following paper was signed by the firm:

"Whereas, Alexander Kirkpatrick and wife have this day executed and delivered to Daniel P. Forst, William H. Skirm, Charles W. Leeds and Joseph M. Forst, partners, trading as D. P. Forst & Co., a bond and mortgage on a certain lot of-land and premises, situate on the easterly side of Clinton street, in the city of Trenton, N. J., securing the payment of the sum of $1,300, with interest, in one year from the date

Forst *v.* Kirkpatrick.

thereof. Now we do hereby certify that the said bond and mortgage were executed and delivered to us as collateral security for the present and future indebtedness of the said Alexander Kirkpatrick to the said firm of D. P. Forst & Co."

After the execution of these papers Alexander Kirkpatrick continued to deal with D. P. Forst & Company as before, and the amount due to the firm on March 18th, 1875, was carried along as a part of the current account until the final close of the account on May 6th, 1899.

On January 31st, 1879, Charles W. Leeds withdrew from the firm, releasing his interest therein to the remaining partners. On January 1st, 1883, William S. Covert became a member of the firm. On May 9th, 1897, Daniel P. Forst died, bequeathing his interest in the firm to Joseph M. Forst. On July 1st, 1901, William H. Skirm retired, transferring his interest to the remaining partners, the complainants herein.

During the entire life of the current account between the parties cash was received from time to time and credited to Alexander Kirkpatrick.

In 1883, 1884 and 1886 certain payments were made by Mrs. Kirkpatrick, viz.: April 6th, 1883, $50; May 31st, $25; June 27th, $25; September 25th, $30; in 1884, April 21st, $30; November 10th, $40; in 1886, July 21st, $50. It appears that nothing was said, at the time of these payments, or indeed at the time of any other payment, respecting the bond and mortgage in suit. The payments made by Mrs. Kirkpatrick were entered in a passbook, in the possession of Mrs. Kirkpatrick, under the following heading: "Alexander Kirkpatrick, in account with D. P. Forst & Co."

The question is whether, after the lapse of time since the execution of the mortgage, it can be now enforced?

The defendants insist that inasmuch as more than twenty years intervened between the execution of the mortgage and the filing of this bill, without recognition by the mortgagor or by Mrs. Kirkpatrick of the existence of the mortgage, the right of entry is barred.

On the part of the complainants it is insisted that there have been payments upon the mortgage debt, which have kept the

mortgage alive. It is suggested by the counsel for the complainants that the firm of D. P. Forst & Company was an entity, which continued in existence during all the fluctuations in its membership; that the security of the mortgage covered all the merchandise sold by these different firms, and that all payments made to them must be regarded as payments upon the debt secured by the mortgage.

It is entirely settled, in respect to the contractual relations between a firm and another person or firm, that those relations are confined to the members of the firm with whom the contract was made. Upon the death or discharge of a member, or upon the introduction of a new member, the new combination constitutes a distinct entity. The new firm, although pursuing the same business, under the same name, as the preceding firm, is irresponsible for, and unable to enforce, the obligations of the contract with the dissolved partnership, unless such responsibility is assumed, or the right to enforce is acquired, by a new contract. A mortgage given to a firm can be enforced only by the members, or surviving members, of that firm. Where securities have been deposited in a bank to secure future advances, and a change has occurred in the banking firm before the making of some of the advances, *prima facie,* the securities extend only to those advances which are made by the firm whilst its members continue the same as when the securities were deposited. And similarly, if a partner pledges his separate property for future advances to be made to his firm, and he afterwards dies, an advance made after his death to his surviving partners will not be chargeable against the property pledged. *Lind. Part. Mortg.* *119; Abat* v. *Penny, 19 La. Ann. 289.*

It requires a new agreement to extend the security given to the old firm, for advances by it, so as to make the security available to cover advances made by a new firm. In *Kensington ex parte, 2 Ves. & B. 79,* deeds were deposited with a firm of bankers, to remain as collateral security for the balance of any sum which the bankers might at any time advance for the borrower's account. One of the members of the firm of bankers retired, and advances were afterwards made to the borrower. Lord Elden held that the security originally only covered advances made

while the firm remained the same, and that there must be an agreement proved to make it cover subsequent advances.

In *Ex parte Alexander, 1 Glyn. & J. 409,* the same rule was applied; but an agreement was found to have been made, after the change of partnership, expressly pledging the same securities with the new firm to secure the debt of the old, as well as the debt of the new, partnership.

In *Ex parte Marsh, 2 Rose 328,* a new agreement was found upon the construction of a letter written to the new firm.

In the present case there is not a scrap of testimony to show any such agreement. It does not appear that the bond and mortgage were ever named between the parties from the date of its execution. It follows, therefore, that the mortgage of March 18th, 1875, secured only the moneys then due and advances made up to the date of the retirement of Mr. Leeds, on January 31st, 1879. At that date there was due to the firm, for the balance due at the time of the execution of the mortgage, together with advances subsequently made, less payments of cash by the mortgagor, a balance of $1,221.27.

Now, as already remarked, in no payment, and therefore, of course, in no payment subsequent to January 31st, 1879, was the bond and mortgage mentioned, nor was there any request whatever that the sums paid should be applied to any particular account. There was no appropriation of payment made by the payers. By the firm these payments were entered on the credit side of the running account as they were made.

At this point the doctrine of appropriation of payment intervenes. As I have already remarked, the balance due the firm at the time of the execution of the mortgage was carried along in the current account down to 1899. Subsequent to January 31st, 1879, there appears to have been paid to the firm, and credited to Alexander Kirkpatrick in its books of account, sums amounting to $4,961.08, exclusive of the notes accepted by the firm and materials returned to the firm.

The well-known rule respecting the appropriation of payments to running accounts is that on a failure of the payer to appropriate, the law will discharge the first debit items. Since the case of *Devaynes* v. *Noble, 1 Meriv. 529,* the rule has been recog-

nized that if, after dissolution of a firm by a change in the partnership, an account is carried on as a running account with the succeeding firms, payments made to subsequent firms, unless appropriated by the party, will go to discharge the oldest items of the acccount. *Bates Part.* § *497; Simson* v. *Cooke, 1 Bing. 452; Bodenham* v. *Purchas, 2 Barn. & Ald. 39; Pemberton* v. *Oakes, 4 Russ. 154; Bank of Scotland* v. *Christie, 8 Cl. & F. 214.*

This case, then, seems to stand thus: The only payments made upon the mortgage debt are not so made expressly by the payer, but only by legal appropriation, and they can in no way be regarded as a recognition by the payer of the existence of the mortgage. If, however, it could be regarded as a payment upon the mortgage, the application of such payments extinguishes the mortgage debt entirely. I am therefore constrained to the conclusion that the complainants' bill must be dismissed.